COMMONWEALTH OF MASSACHUSETTS
SUFFOLK, SS                                      SUPERIOR COURT
                                                 No. 21-cv-0285-F

AMENYONAH BOSSMAN
                                                 AMENDED COMPLAINT-
v.                                               AS OF COURSE

SUFFOLK CONSTRUCTION CO.

1. Plaintiff, Amenyonah Bossman, is a female African American citizen of the United States, a member of the protected class, residing at 14 Stonecrest Road, Suffolk County, Massachusetts.

2. Defendant Suffolk Construction Co., is a corporation duly organized and doing business under the laws of the Commonwealth of Massachusetts, with a place of business located at 65 Allerton Street, Suffolk County, Boston, 02119. At all times relevant to this action, defendant was a recipient of monies from federal and state governments and as a quid pro quo for such receipt, was bound to follow fair employment practice requirements, in all phases of employment, including the requirements of Executive Order 526 (Gov.Patrick's Order) and the provisions of Massachusetts law set forth in G.L. c.151B(4) et seq. and as determined by Massachusetts courts. Defendant has been described in its promotional materials as the largest construction company in the state and performs a substantial amount of work for government at all levels, on public projects.

3. Plaintiff entered into a contract at will with defendant, in/around 2010 to perform services, initially, as a Journeyman and relied on the pledges, above described, which were made by defendant to governmental entities and continued to rely on same in remaining in employment, that the defendant would observe fair employment practice pledges made by defendant to governmental officials. At some point in the employment, plaintiff later performed duties as an Asst.Superintendent.

4. The requirements of state law, including the mandates of E.O. 526; G.L. c.151 B (4) et seq. and decisions of Massachusetts courts and defendant's pledge to abide by same as a quid pro quo for receipt of state contracts and financial assistance, were sufficient to form the terms of a contract between the state and defendant and plaintiff was an intended beneficiary of such contract.

5. Defendant promulgated an Employee Handbook, made available to employees and other literature, which described its commitment to F.E.P. in all phases of employment and intended that employees would rely on such representations, including representations that it would fully and comprehensively investigate complaints of discrimination and unfair treatment and take remedial action. The provisions of the Employee Handbook and the defendant's publications, relative to its adherence to F.E.P., were sufficient to set forth the terms of a contract
6. Plaintiff was a member of the Carpenters Union and an intended beneficiary of the terms and condition of the CBA between the Union and defendant.
7. Plaintiff did perform substantial amounts of work for the defendant, in/on public work projects. Plaintiff was qualified for the employment and satisfactorily discharged her duties.
8. The defendant, consistent with its agreement with the union, as described in the Collective Bargaining Agreement and with governmental authorities, was required to pay plaintiff the 'prevailing wage', which included contributions to the union for plaintiff's pension, sick, medical and other fringe benefits.
9. The defendant was also required, by the terms of the provisions of the Executive Order 526 and state law, to pay plaintiff at a non-discriminatory wage, relative to other employees performing same or similar work.
10. Defendant for a substantial period of time, during the course of employment, refused to pay plaintiff the prevailing wage, even though plaintiff worked substantially on public work projects.
11. Defendant has paid plaintiff at a discriminatory wage and at the time of the plaintiff's constructive termination/involuntary discharge, had not rectified the discriminatory payments. Defendant continues to owe plaintiff a substantial sum of money on account of discriminatory wages.
12. Plaintiff did protest over the discriminatory wages and violations of the Wage Act to supervisory officials who assured plaintiff that they would conduct investigations and report back to plaintiff.
13. It was a term and condition of plaintiff's employment, imposed by state law, that defendant would promptly and thoroughly investigate complaints of discrimination and unfair treatment, report back to the complaining party as to the results of the investigations so that the complainant could seek the filing of a grievance through the

union, file a complaint with the appropriate state agency and/or commence litigation in a court of competent jurisdiction.

14. Plaintiff waited for a reasonable period of time for the supervisors to report back to her, relative to the findings/results, into her claim of discriminatory wages but they did not conduct investigations, despite their promises. Plaintiff, based on the tenuous experience of African Americans with white authority figures who resent questioning of their powers by members of the protected class, was reluctant to importune the supervisors for information as to the wages issue and reasonably relied on defendant's representations that it would conduct investigations and report back to her.

15. Supervisory officials of the defendant exercised their supervisory functions, based in substantial measure on a white supremacist framework, which included the expectation, according to venerable custom, that black employees would not question their authority or challenge them as to violations of the terms and conditions of their employment.

16. Supervisory officials, intended and expected that plaintiff would rely on their representations that they would conduct statutorily required investigations and that plaintiff would not seek administrative/legal relief until defendant reported back to her on the results of its investigations.

17. The supervisors and defendant engaged in a cover-up of their violations of plaintiff's right to a statutory investigation, to a timely report and rectification of the racist conduct, with the intent to deny plaintiff the information necessary to her realization of the accrual of an action for fraudulent concealment of their wrongs.

18. The supervisors and defendant, agreed to take the adverse action for as long as possible, with the intent that plaintiff's right to seek timely agency and/or judicial relief, would be extinguished by operation of the statute of limitations and/or to omit to provide truthful information in any agency proceeding and in any judicial action in which plaintiff might seek judicial relief. The acts and omission of the supervisors and defendant were racially motivated and also prompted by retaliatory animus on account of the plaintiff's exercise of her right to oppose discrimination.

19. The workplace became contaminated with racial discrimination and humiliation caused and perpetuated by the discriminatory wages, refusal to pay prevailing wages and acts of retaliation.

20. Plaintiff came to realize that the defendant did not intend to halt the ongoing racist practices, that supervisors and defendant did not value her contribution to the company and that she could not expect advancement within the company, given the climate of racism which pervaded and adversely affected the performance of her duties.

21. The statutory violations were motivated by racial and retaliatory animus, effected an ongoing interference with the terms and conditions of plaintiff's employment, sufficient to cause stress, anxiety and mental injuries to plaintiff and to subject plaintiff to constructive termination.

22. It has been reliably established and reported in authoritative publications, including medical/psychological, sociological journals, that black people who are subjected to racial discrimination in the workplace, develop various debilitating conditions/syndromes, including but not limited to: hypertension, depression, anxiety and are also likely to experience strokes, suicidal ideation and death.

23. The information relative to the deleterious effects of workplace racial discrimination on black people has been widely reported, including publication in daily newspapers. Supervisory officials of the defendant, were and should have been aware of such information, at the time of the taking of the adverse employment actions toward the plaintiff.

24. As a direct result of the invidious and retaliatory interference with the terms and conditions of her employment, plaintiff was forced to involuntarily separate from the employment on or about 7th.October, 2017.

25. In violation of the terms of the contract and state law, G.L.c.149 S.148, defendant has refused to pay the wages owed, within a reasonable time of the separation and continues to refuse to pay same.

26. Upon information and belief, supervisors of the defendant have entered into agreement, whose objectives include but are not limited to: obscuring/falsifying the information relative to plaintiff's employment, including the payment of discriminatory and illegal wages; proffering of false information to any agency or court in which the plaintiff would present her claims for relief; declining to provide accurate information, known to them, relative to defendant's invidious interference with the terms and conditions of plaintiff's employment; suppressing/covering up relevant information to interfere with plaintiff's right to seek administrative/legal

relief for as long as administrative/legal proceedings are extant, including any period in which plaintiff may seek appellate relief.

27. Plaintiff did file a Charge at the MCAD, in which Charge and its amendments and a Memorandum, plaintiff set forth allegations of disparate treatment and invidious interference with the terms and conditions of her employment, as above described.

28. Plaintiff, prior to commencement of the instant action, did provide notice to the office of the Attorney-General and sought permission to institute a private action, which permission was granted.

29. All conditions precedent to the commencement of this action have occurred and have been fulfilled.

## CLAIMS FOR RELIEF

30. Plaintiff repeats and re-alleges all of the averments of paragraphs 1 through 29, with the same force and effect as if fully set forth herein.

31. DISPARATE TREATMENT: As a result of the foregoing, defendant has subjected plaintiff to disparate treatment, in violation of G.L.c.151B (4),

32. DISPARATE TREATMENT: As a result of the foregoing, defendant has subjected plaintiff to disparate treatment, in violation of 42 U.S.C. S.1981.

33. INVIDIOUS INTERFERENCE WITH THE TERMS AND CONDITIONS OF THE CONTRACT OF EMPLOYMENT: As a result of the foregoing, defendant invidiously interfered with the terms and conditions of plaintiff's employment. G.L.c.151B(4) and S.1981.

34. DISCRIMINATORY TERMINATION: G.L. c.151B(4). As a result of the foregoing, defendant subjected plaintiff to constructive termination by virtue of the creation and perpetuation of a hostile work environment, in contravention of G.L.c.151B (4).

35. DISCRIMINATORY TERMINATION: 42 U.S.C. S.1981. As a result of the foregoing, defendant subjected plaintiff to constructive termination, by virtue of the creation and perpetuation of a hostile work environment,, forbidden by 42 U.S.C. S1981,

36. RETALIATION: As a result of the foregoing, the defendant subjected plaintiff to adverse action on account of her engaging in protected activity by protesting against invidious interference with the terms and conditions of her employment.. G.L.c.151 B (4)(4).

37. RETALIATION: 42 U.S.C. S.1981. As a result of the foregoing, defendant subjected plaintiff to adverse action on account of her having exercised her right to

engage in protected activity in opposing invidious interference with the terms and condition of her employment, in contravention of 42 U.S.C. S.1981,

38. WAGE ACT VIOLATIONS: As a result of the foregoing, defendant violated the provisions of the Wage Statute, by refusing to pay plaintiff the prevailing wage in the course of employment and by continuing to refuse to make such payment. G.L.c.149 S.148.
39. WAGE ACT VIOLATIONS: As a result of the foregoing, defendant violated the provisions of the Wage Statute by refusing to pay wages owed at the time of the separation and by its continuing refusal to make such payment.
40. RIGHT OF ACCESS TO COURT: As a result of the foregoing, defendant has violated plaintiff's right of access to court.
41. BREACH OF CONTRACT- EMPLOYER/EMPLOYEE: As a result of the foregoing, defendant has in bad faith, breach the terms of the contract of employment between plaintiff and defendant.
42. BREACH OF CONTRACT-THIRD PARTY BENEFICIARY GOVERNMENT/DEFENDANT: As a result of the foregoing, defendant, in bad faith, breach the terms of the contract between defendant and the Commonwealth of Massachusetts.
43. BREACH OF CONTRACT-THIRD PARTY BENEFICIARY-CBA: As a result of the foregoing, defendant, in bad faith, breached the terms of the CBA.
44. FRAUDULENT CONCEALMENT OF CAUSE OF ACTION: As a result of the foregoing, defendant, out of discriminatory animus, fraudulently concealed from plaintiff, a cause of action.
45. VIOLATION OF THE E.P.A.: As a result of the foregoing, defendant violated plaintiff's rights secured by the E.P.A.

WHEREFORE, plaintiff requests entry of judgment on liability against defendant, declare that defendant has violated the provisions of Executive Order 526; G.L. c.151B(4) et seq. and the Wage Statute; award costs and expenses, including reasonable attorney's fees, punitive damages and grant such other and further relief as may be just and equitable.

JURY TRIAL DEMAND

Respectfully Submitted,

_____
W. Kendall, BBO # 267480
136 Warren St.
Roxbury, Ma. 02119
(617) 442-6130

## CERTIFICATE OF SERVICE

I, W.Kendall, hereby certify that on 14th.April, 2021, I made service of the foregoing Amended Complaint-As of Course, upon Atty.K.Scammon, Torres Scammon, 119 High St., Boston. Ma.02110, first class mail, postage pre-paid.

_____
W. Kendall