# LAW OFFICE OF W. KENDALL
## ATTORNEY AT LAW

W. KENDALL

136 WARREN STREET
ROXBURY, MASSACHUSETTS 02119
(617) 442-6130

14th.April, 2021

Atty.K.Scammon
Torres Scammon
119 High St.
Boston, Ma.02110

Re: No. 21-cv-0285-F
Bossman v Suffolk

Dear Atty.Scammon:

Pursuant to Rule 9A, please find enclosed:  Plaintiff's Opposition to Motion to Dismiss; Motion to Strike Exhibit 2; Motion For Appointment of Expert; Amended Complaint-As of Course; Memorandum In Support of Opposition To Motion To Dismiss and Certificate of Service.

Do contact us if there are questions.

Thank you.

Sincerely,

W.Kendall

Enclosures

COMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS                                     SUPERIOR COURT

No. 21-cv-0285

AMENYONAH BOSSMAN                    PLAINTIFF'S OPPOSITION TO

v.                                                        MOTION TO DISMISS

SUFFOLK CONSTRUCTTION CO.

The plaintiff hereby opposes defendant's motion to dismiss.  The facts of the
Amended Complaint-As of Course, indicate that defendant has failed to carry its burden
of showing that the African-American female plaintiff, a member of the protected class,
can prove no set of facts which would entitle Complainant to relief.  Arroyo-Audifred v.
Verizon Wireless, Inc., 431 F.Supp. 2d 215 (D.P.R.., 2006)

The well-pleaded allegations of the Amended Complaint, Reed v. Airtran
Airways, 531 F.Supp. 2d 660 (D., Md., 2008) which have to be accepted as true for
purposes of the adjudication of the instant motion, will impose liability on defendant for
the payment of wages on a discriminatory basis; the contributions/payments to the
plaintiff's pension and other retirement benefits on a discriminatory basis, discriminatory
and retaliatory refusal to pay plaintiff the wages due at the time of the constructive
termination, Bazemore v. Friday,  478 U.S. 385, 395 (1986); EEOC v. Colby College,
589 F.2d 1139 (1st.Cir., 1978) and the invidious interference with the terms and
conditions of employment which caused a constructive termination of complainant's
employment.  .

Defendant's continuous violations of plaintiff's right to be free from
discrimination in the terms and conditions of her employment, including but not limited
to the right to receipt of wages, pension and other retirement benefits, on a non-
discriminatory basis, violate plaintiff's common-law rights and statutory rights, including
those secured by the E.P.A.  Sobel v. Yeshiva Univ., 839 F.2d 18, 21-23, 29  (2d.Cir.,
1988)(...the failure to bring women's salaries up to par with those of men....is the sort of
pattern and practice which would sustain a disparate treatment claim).

The facts of the Amended Complaint show that supervisory officials of the
defendant subjected plaintiff to numerous adverse actions - interference with the terms
and conditions of her employment by:  refusing to investigate her complaints of racial
discrimination, halting acts of discrimination and reporting back to plaintiff in a timely
manner; LeDoux v. Bristol Community College, 96 Mas. App. Ct. 1108 (2019);

fraudulently concealing from plaintiff their invidious acts of interference, Chace v.
Curran,  71 Mass.App. Ct. 258, 881 N.E. 2 792 (2008) with the intent that plaintiff would
detrimentally rely on their misrepresentations,  Riley v. Presnell,409 Mass. 239, 245-246
and would be unaware of the accrual of the right seek agency/judicial relief before the
expiration of the statute of limitations period;  agreeing among themselves to withhold
from any investigative agency and judicial tribunal, truthful and accurate information to
which they had access, during the pendency of any litigation.  The adverse actions to
which the supervisors subjected plaintiff were continuous, sufficient to create and
perpetuate a hostile  environment,  Marrero v. Goya of P.R., Inc., 304 F.3d 7, 18 (1st.Cir.,
2002)  permeated with racism and retaliation, which interfered with the black female
plaintiff's ability to discharge her duties free from the debilitating stress, anxiety and
other neuroses which the supervisors knew, from the available information appearing in
newspapers and authoritative medical, sociological and psychological publications, tend
to produce deleterious conditions, including stress, hypertension, stroke, diabetes,
depression, suicidal ideation and death in members of the protected class. The hostile
environment was sufficiently severe to cause constructive termination.  Rivera & Rivera
v. Medina & Medina, 898 F.3d 77,96 (1st.Cir., 2018)

      The supervisory officials and the defendant, in bad faith, breached plaintiff's
rights under the contracts with the employer, Lipsitt v. Laud, 466 Mass. 240 (2013),
under the CBA with the union and with the government, as set forth in the provisions of
E.O. 526 and decisions of Massachusetts courts, by denying plaintiff non-discriminatory
wages and continuing to deny plaintiff wages which are/were owed as of the date of the
separation.   DePianti v. Jan-Pro Franchising, 465 Mass. 607, 990 NE. 2d 1054 (2013).

      Plaintiff relies upon the allegations of the Amended Complaint-As of Course and
on the Memorandum which is annexed and incorporated.

Respectfully Submitted,

-----------------------------
W.Kendall.  BBO 267480
136 Warren St.
Roxbury, Ma. 02119
(617) 442-6130
Invictusille@live.com

COMONWEALTH OF MASSACHUSETTS
SUFFOLK, SS                                    SUPERIOR COURT
                                                  No. 21-cv-0285


AMENYONAH BOSSMAN                        PLAINTIFF'S MOTION TO
                                                         STRIKE EXHIBIT 2
v.

SUFFOLK CONSTRUCTTION CO.

　　　Plaintiff moves that the court issue an Order which would strike defendant's
Exhibit 2-Affidavit of Terrence Miglio, on the ground that the writing contains hearsay
information, which does not fall under well-recognized exceptions to the hearsay rule.

　　　Further, the writing contains information which is not relevant to the material
issues in this matter.

　　　Plaintiff hereby seeks leave of court and reserves the right to make further
submissions on this matter, as the circumstances may counsel.




Respectfully Submitted,



W.Kendall, BB0 267480
136 Warren St.
Roxbury, Ma. 02119
(617) 442-6130
Invictusille@live.com

COMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS                           SUPERIOR COURT

No. 21-cv-0285

AMENYONAH BOSSMAN

                                      PLAINTIFF'S MOTION FOR
v.                                    APPOINTMENT OF EXPERT
                                      BY THE COURT

SUFFOLK CONSTRUCTTION CO.


Pursuant to MGE S.706, plaintiff hereby moves that the court appoint an expert who would study the facts and circumstances surrounding this litigation, including the matters set forth in plaintiff's Memorandum In Support of Opposition to Motion To Dismiss and offer an opinion, with regard to acts of discriminatory and fraudulent concealment of their wrongdoing, by defendant's supervisory officials from plaintiff. Chace v. Curran, 71 Mass. App. Ct. 258 (2008)

An expert opinion on this issue is relevant to the material issues as to whether the said adverse employment actions of defendant's supervisors tended to cause the African American female plaintiff to detrimentally rely on misrepresentations as to the conducting of an investigation into her complaints of racial discrimination (denying plaintiff timely information regarding the accrual of a cause of action) and whether the plaintiff's detrimental reliance was rooted in historical deference of African Americans to white persons in positions of authority, Riley v Presnell 409 Mass. 239, 245-246 and on the racially supremacist beliefs of white supervisors that black subordinates would accept their (mis) representations without cavil, out of fear of reprisal, in the form of further adverse employment actions.

In the alternative, plaintiff moves that the court grant plaintiff a reasonable period of time to obtain the services of an expert, on the issues above-described, who would be compensated according to the provisions of the Indigency Statute.

Respecffully Submitted,

W.Kendall, BO 267480
136 Warren St.
Roxbury, Ma. 02119
(617)  442-6130
Invictusille@live.com

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS                                    SUPERIOR COURT
                                              No. 21-cv-0285-F


AMENYONAH BOSSMAN
                                   AMENDED COMPLAINT-
v.                                 AS OF COURSE

SUFFOLK CONSTRUCTION CO.

1.  Plaintiff, Amenyonah Bossman, is a female African American citizen of the United
    States, a member of the protected class, residing at 14 Stonecrest Road, Suffolk
    County, Massachusetts.

2.  Defendant Suffolk Construction Co., is a corporation duly organized and doing
    business under the laws of the Commonwealth of Massachusetts, with a place of
    business located at 65 Allerton Street, Suffolk County, Boston, 02119.  At all times
    relevant to this action, defendant was a recipient of monies from federal and state
    governments and as a quid pro quo for such receipt, was bound to follow fair
    employment practice requirements, in all phases of employment, including the
    requirements of Executive Order 526 (Gov.Patrick's Order) and the provisions of
    Massachusetts law set forth in G.L. c.151B(4) et seq. and as determined by
    Massachusetts courts.  Defendant has been described in its promotional materials as
    the largest construction company in the state and performs a substantial amount of
    work for government at all levels, on public projects.

3.  Plaintiff entered into a contract at will with defendant, in/around 2010 to perform
    services, initially, as a Journeyman and relied on the pledges, above described, which
    were made by defendant to governmental entities and continued to rely on same in
    remaining in employment, that the defendant would observe fair employment
    practice pledges made by defendant to governmental officials.  At some point in the
    employment, plaintiff later performed duties as an Asst.Superintendent.

4.  The requirements of state law, including the mandates of E.O. 526; G.L. c.151 B (4)
    et seq. and decisions of Massachusetts courts and defendant's pledge to abide by
    same as a quid pro quo for receipt of state contracts and financial assistance, were
    sufficient to form the terms of a contract between the state and defendant and
    plaintiff was an intended beneficiary of such contract.

5. Defendant promulgated an Employee Handbook, made available to employees and other literature, which described its commitment to F.E.P. in all phases of employment and intended that employees would rely on such representations, including representations that it would fully and comprehensively investigate complaints of discrimination and unfair treatment and take remedial action. The provisions of the Employee Handbook and the defendant's publications, relative to its adherence to F.E.P., were sufficient to set forth the terms of a contract

6. Plaintiff was a member of the Carpenters Union and an intended beneficiary of the terms and condition of the CBA between the Union and defendant.

7. Plaintiff did perform substantial amounts of work for the defendant, in/on public work projects. Plaintiff was qualified for the employment and satisfactorily discharged her duties.

8. The defendant, consistent with its agreement with the union, as described in the Collective Bargaining Agreement and with governmental authorities, was required to pay plaintiff the 'prevailing wage', which included contributions to the union for plaintiff's pension, sick, medical and other fringe benefits.

9. The defendant was also required, by the terms of the provisions of the Executive Order 526 and state law, to pay plaintiff at a non-discriminatory wage, relative to other employees performing same or similar work.

10. Defendant for a substantial period of time, during the course of employment, refused to pay plaintiff the prevailing wage, even though plaintiff worked substantially on public work projects.

11. Defendant has paid plaintiff at a discriminatory wage and at the time of the plaintiff's constructive termination/involuntary discharge, had not rectified the discriminatory payments. Defendant continues to owe plaintiff a substantial sum of money on account of discriminatory wages.

12. Plaintiff did protest over the discriminatory wages and violations of the Wage Act to supervisory officials who assured plaintiff that they would conduct investigations and report back to plaintiff.

13. It was a term and condition of plaintiff's employment, imposed by state law, that defendant would promptly and thoroughly investigate complaints of discrimination and unfair treatment, report back to the complaining party as to the results of the investigations so that the complainant could seek the filing of a grievance through the

union, file a complaint with the appropriate state agency and/or commence litigation in a court of competent jurisdiction.

14. Plaintiff waited for a reasonable period of time for the supervisors to report back to her, relative to the findings/results, into her claim of discriminatory wages but they did not conduct investigations, despite their promises.   Plaintiff , based on the tenuous experience of African Americans with white authority figures who resent questioning of their powers by members of the protected class, was reluctant to importune the supervisors for information as to the wages issue and reasonably relied on defendant's representations that it would conduct investigations and report back to her.

15. Supervisory officials of the defendant exercised their supervisory functions, based in substantial measure on a white supremacist framework, which included the expectation, according to venerable custom, that black employees would not question their authority or challenge them as to violations of the terms and conditions of their employment.

16. Supervisory officials, intended and expected that plaintiff would rely on their representations that they would conduct statutorily required investigations and that plaintiff would not seek administrative/legal relief until defendant reported back to her on the results of its investigations.

17. The supervisors and defendant engaged in a cover-up of their violations of plaintiff's right to a statutory investigation, to a timely report and rectification of the racist conduct, with the intent to deny plaintiff the information necessary to her realization of the accrual of an action for fraudulent concealment of their wrongs.

18. The supervisors and defendant, agreed to take the adverse action for as long as possible, with the intent that plaintiff's right to seek timely agency and/or judicial relief, would be extinguished by operation of the statute of limitations and/or to omit to provide truthful information in any agency proceeding and in any judicial action in which plaintiff might seek judicial relief.   The acts and omission of the supervisors and defendant were racially motivated and also prompted by retaliatory animus on account of the plaintiff's exercise of her right to oppose discrimination.

19. The workplace became contaminated with racial discrimination and humiliation caused and perpetuated by the discriminatory wages, refusal to pay prevailing wages and acts of retaliation.

20. Plaintiff came to realize that the defendant did not intend to halt the ongoing racist practices, that supervisors and defendant did not value her contribution to the company and that she could not expect advancement within the company, given the climate of racism which pervaded and adversely affected the performance of her duties.

21. The statutory violations were motivated by racial and retaliatory animus, effected an ongoing interference with the terms and conditions of plaintiff's employment, sufficient to cause stress, anxiety and mental injuries to plaintiff and to subject plaintiff to constructive termination.

22. It has been reliably established and reported in authoritative publications, including medical/psychological, sociological journals, that black people who are subjected to racial discrimination in the workplace, develop various debilitating conditions/syndromes, including but not limited to: hypertension, depression, anxiety and are also likely to experience strokes, suicidal ideation and death.

23. The information relative to the deleterious effects of workplace racial discrimination on black people has been widely reported, including publication in daily newspapers. Supervisory officials of the defendant, were and should have been aware of such information, at the time of the taking of the adverse employment actions toward the plaintiff.

24. As a direct result of the invidious and retaliatory interference with the terms and conditions of her employment, plaintiff was forced to involuntarily separate from the employment on or about 7th.October, 2017.

25. In violation of the terms of the contract and state law, G.L.c.149 S.148, defendant has refused to pay the wages owed, within a reasonable time of the separation and continues to refuse to pay same.

26. Upon information and belief, supervisors of the defendant have entered into agreement, whose objectives include but are not limited to: obscuring/falsifying the information relative to plaintiff's employment, including the payment of discriminatory and illegal wages; proffering of false information to any agency or court in which the plaintiff would present her claims for relief; declining to provide accurate information, known to them , relative to defendant's invidious interference with the terms and conditions of plaintiff's employment; suppressing/covering up relevant information to interfere with plaintiff's right to seek administrative/legal

relief for as long as administrative/legal proceedings are extant, including any period in which plaintiff may seek appellate relief.

27. Plaintiff did file a Charge at the MCAD, in which Charge and its amendments and a Memorandum, plaintiff set forth allegations of disparate treatment and invidious interference with the terms and conditions of her employment, as above described.

28. Plaintiff, prior to commencement of the instant action, did provide notice to the office of the Attorney-General and sought permission to institute a private action, which permission was granted.

29. All conditions precedent to the commencement of this action have occurred and have been fulfilled.

CLAIMS FOR RELIEF

30. Plaintiff repeats and re-alleges all of the averments of paragraphs 1 through 29, with the same force and effect as if fully set forth herein.

31. DISPARATE TREATMENT: As a result of the foregoing, defendant has subjected plaintiff to disparate treatment, in violation of G.L.c.151B (4),

32. DISPARATE TREATMENT: As a result of the foregoing, defendant has subjected plaintiff to disparate treatment, in violation of 42 U.S.C. S.1981.

33. INVIDIOUS INTERFERENCE WITH THE TERMS AND CONDITIONS OF THE CONTRACT OF EMPLOYMENT: As a result of the foregoing, defendant invidiously interfered with the terms and conditions of plaintiff's employment. G.L.c.151B(4) and S.1981.

34. DISCRIMINATORY TERMINATION: G.L. c.151B(4). As a result of the foregoing, defendant subjected plaintiff to constructive termination by virtue of the creation and perpetuation of a hostile work environment, in contravention of G.L.c.151B (4).

35. DISCRIMINATORY TERMINATION: 42 U.S.C. S.1981. As a result of the foregoing, defendant subjected plaintiff to constructive termination, by virtue of the creation and perpetuation of a hostile work environment,, forbidden by 42 U.S.C. S1981,

36. RETALIATION: As a result of the foregoing, the defendant subjected plaintiff to adverse action on account of her engaging in protected activity by protesting against invidious interference with the terms and conditions of her employment.. G.L.c.151 B (4)(4).

37. RETALIATION: 42 U.S.C. S.1981. As a result of the foregoing, defendant subjected plaintiff to adverse action on account of her having exercised her right to

engage in protected activity in opposing invidious interference with the terms and
condition of her employment, in contravention of 42 U.S.C. S.1981,

38. WAGE ACT VIOLATIONS: As a result of the foregoing, defendant violated the
provisions of the Wage Statute, by refusing to pay plaintiff the prevailing wage in the
course of employment and by continuing to refuse to make such payment. G.L.c.149
S.148.

39. WAGE ACT VIOLATIONS: As a result of the foregoing, defendant violated the
provisions of the Wage Statute by refusing to pay wages owed at the time of the
separation and by its continuing refusal to make such payment.

40. RIGHT OF ACCESS TO COURT: As a result of the foregoing, defendant has
violated plaintiff's right of access to court.

41. BREACH OF CONTRACT- EMPLOYER/EMPLOYEE:  As a result of the
foregoing, defendant has in bad faith, breach the terms of the contract of employment
between plaintiff and defendant.

42. BREACH OF CONTRACT-THIRD PARTY BENEFICIARY
GOVERNMENT/DEFENDANT:  As a result of the foregoing, defendant, in bad
faith, breach the terms of the contract between defendant and the Commonwealth of
Massachusetts.

43. BREACH OF CONTRACT-THIRD PARTY BENEFICIARY-CBA:  As a result of
the foregoing, defendant, in bad faith, breached the terms of the CBA.

44. FRAUDULENT CONCEALMENT OF CAUSE OF ACTION: As a result of the
foregoing, defendant, out of discriminatory animus, fraudulently concealed from
plaintiff, a cause of action.

45. VIOLATION OF THE E.P.A.: As a result of the foregoing, defendant violated
plaintiff's rights secured by the E.P.A.
WHEREFORE, plaintiff requests entry of judgment on liability against defendant,
declare that defendant has violated the provisions of Executive Order 526; G.L.
c.151B(4) et seq. and the Wage Statute; award costs and expenses, including
reasonable attorney's fees, punitive damages and grant such other and further relief
as may be just and equitable.


JURY TRIAL DEMAND

Respectfully Submitted,

_____
W.Kendall, BBO # 267480
136 Warren St.
Roxbury, Ma. 02119
(617) 442-6130

CERTIFICATE OF SERVICE

I, W.Kendall, hereby certify that on 14th.April, 2021, I made service of the foregoing Amended Complaint-As of Course, upon Atty.K.Scammon, Torres Scammon, 119 High St., Boston. Ma.02110, first class mail, postage pre-paid.

_____
W.Kendall

COMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS                                    SUPERIOR COURT
                                              No. 21-cv-0285


AMENYONAH BOSSMAN

                          PLAINTIFF'S MEMORANDUM
v.                        IN SUPPORT OF OPPOSITION
                          TO MOTION TO DISMISS

SUFFOLK CONSTRUCTTION CO.


FACTS:

1.      The plaintiff, Ms.Bossman, is an African American female citizen of the United
        States, a member of the protected class, a resident of Suffolk County,
        Massachusetts.  Plaintiff was first employed by defendant as a journeyman
        carpenter and later, in a supervisory capacity as an Asst. Superintendent, for over
        seven years on various public works construction projects, at different locations
        within Suffolk County.  Plaintiff was qualified for the employment and
        satisfactorily discharged her duties.

2.      Defendant is a corporation doing business under the laws of the Commonwealth
        of Massachusetts with a place of business at 65 Allerton St., Suffolk County,
        Boston.  At all times relevant to this action, defendant was a recipient of monies
        from federal and state government and as a quid pro quo for such receipt, was
        bound to follow fair employment practice requirements, set forth in the Executive
        Order 526 (Gov.Patrick's Order) and G.L.c.151B(4) et seq..

3.      In/ around 2010, plaintiff entered into a contract at will with defendant , to
        perform services as a Journeyman and in entering into and remaining in such
        contract, relied on the pledges, above-described, which were made by defendant
        to governmental entities, of non-discriminatory treatment and commitment to
        practices described in Executive Order 526.  The said requirements of the
        Executive Order were sufficient to form the terms and conditions of the contract
        of employment.  Plaintiff is an intended beneficiary of provisions of said
        contract.

4.      At the time of the commencement of her employment and continuously
throughout her employment, the defendant paid plaintiff at a discriminatory wage, in
comparison to other employees with plaintiff's qualifications.  Defendant also

discriminated against plaintiff by its repeated discriminatory refusal to pay plaintiff, the full prevailing minimum wage, comprising a weekly salary plus contributions to fringe benefits, in plaintiff's behalf to the union, comparable to those made on behalf of others who were not of the protected class.

5. Plaintiff was a member of the union and an intended beneficiary of the terms and conditions of the CBA between the union and defendant.

6. Plaintiff performed a substantial portion of her work on public works construction projects and was statutorily entitled to be paid at the 'prevailing wage'/'minimum wage', which included contributions to the union for plaintiff's pension, sick, medical and other fringe benefits.

7.     Ms.Bossman protested to supervisory officials, over and /opposed these discriminatory wages and Wage Act violations.  The said  supervisory officials assured plaintiff that they would conduct investigations and bring to a halt, the discriminatory practices of which plaintiff had complained and report back to plaintiff..

8. It was a term and condition of plaintiff's contract of employment, a requirement of the CBA and the provisions of G.L.c.151B(4) and E.O. 526, that the defendant would conduct a prompt and fair investigation into plaintiff's complaints and report back to plaintiff.

9. Had the defendant complied with the said terms and conditions of the employment, by conducting prompt investigations and reporting back to plaintiff as to the findings/results of the investigations and brought to a halt, the discriminatory practices of which plaintiff had complained, plaintiff would have requested that the union timely file and prosecute a grievance.

7. Supervisory officials represented to Ms.Bossman that they would investigate her complaints and report back to her.  Plaintiff reasonably relied on such representations.

8. Plaintiff relied on these representations and expected that, consistent with the respondent's professed observance of Fair Employment Practices (F.E.P.) protocol, that defendant would conduct a comprehensive, fair and prompt investigation.

9. Even though plaintiff awaited an investigation and a report from defendant, the latter has not investigated the said complaints, rectified the discriminatory practices nor, up to the time of the commencement of the instant action, provided a report back to plaintiff.

10.The defendant intended to hide from plaintiff and cover-up, its acts and omissions which would have apprised the plaintiff of the accrual of an action on account of

defendant's invidious interference with the term and conditions of employment.

11. Defendant intended and expected that plaintiff would rely on its promises that it would conduct the statutorily required investigations and that plaintiff would forbear from seeking administrative/legal relief until defendant reported back to her as to the results of the investigation. Defendant intended and expected that the limitations period for the plaintiff's taking of administrative/legal action, would have expired, by the time plaintiff came to realize that the defendant had violated the terms and conditions of her employment.

12. The discriminatory practices, above-alleged, caused the workplace to be contaminated with racial discrimination and interfered with the plaintiff's performance of her duties. The activities of the respondent created and perpetuated a hostile work environment.

13. Plaintiff felt that the defendant and its agents, by virtue of their continued interference with the terms and conditions of her employment, had, in fact, endorsed the acts of disparate treatment, belittled her contributions to the company and devalued her as an individual and were invidiously motivated in doing so.

14. The continued payment of discriminatory wages, discriminatory refusal to pay prevailing wages, including but not limited defendant's discriminatory refusal to make payments to the union in plaintiff's behalf, interfered with plaintiff's ability to execute her duties, caused and contributed to cause the creation and perpetuation of a hostile workplace environment, contaminated with racism, retaliation and disparate treatment.

16. On account of the hostile work environment, caused and perpetuated by defendant and its supervisors, plaintiff was subjected to involuntary separation/constructive termination on or about 7th.October, 2017.

17. In violation of the terms of the contract and state law, G.L. c.149 S.148 et seq., at the time of the involuntary separation/constructive termination, there was due and owing to plaintiff, by defendant, a substantial sum of money, for wages, including but not limited to, vacation pay, pension and other fringe benefits which should have been part of complainant's minimum wage and which defendant has refused to pay, within a reasonable time of the separation and continues to refuse to pay.

18. Plaintiff did file a Charge at MCAD, amendments and a Memorandum in support, in which plaintiff set forth the particulars of the defendant's various acts of invidious interference with plaintiff's contract of employment, including but not limited to, violations of the Wage Act.

19. Plaintiff did apprise the Office of the Attorney-General of the defendant's violations of the Wage Act and Prevailing Wage statute and did seek leave to commence action in her own name.   The office of the Attorney-General did grant plaintiff permission to commence such action.

20. All conditions precedent to the commencement of this action have occurred and have been fulfilled.

ISSUE:  HAS DEFENDANT MET ITS BURDEN OF SHOWING THAT PLAINTIFF CAN DEMONSTRATE NO SET OF FACTS WHICH WOULD ENTITLE HER RELIEF

ARGUMENT:  THE WELL-PLEADED ALLEGATIONS OF THE COMPLAINT ARE SUFFICIENT TO ESTABLISH LIABILITY FOR DISPARATE TREATMENT AND INTERFERENCE WITH THE TERMS AND CONDITIONS OF THE CONTRACT OF EMPLOYMENT

The defendant, on its motion to dismiss, bears a heavy burden. That burden the defendant cannot meet in the face of the well-pleaded allegations of the Amended Complaint-As of Course (hereinafter referred to as 'the Complaint") which must be accepted as true.  Nader v. Citron, 372 Mass. 96-, 97-98 (1977); Reed v. Airtran Airways, 531 F.Supp. 2d 660, 665 (D. Md., 2008).   The defendant's motion must be denied since defendant has not met its burden of showing that plaintiff cannot prove any set of facts which would entitle plaintiff to relief.  Arroyo-Audifred v. Verizon Wireless, Inc., 431 F.Supp. 2d 215 (D.P.R.., 2006).

**PAYMENT OF DISCRIMINATORY WAGES-AS VIOLATION OF G.L.c.151B(4) 42 U.S.C. S.1981 AND THE E.P.A.**

The well-pleaded allegations of the Complaint, which have to be accepted as true for purposes of the adjudication of the instant motion, will impose liability on defendant for the payment of wages on a discriminatory basis and the discriminatory and repeated refusal, to make full payment of the prevailing minimum wage, comprising weekly salary, plus contributions/payments to the complainant's pension and other retirement benefits. Bazemore v. Friday,  478 U.S. 385, 395 (1986); EEOC v. Colby College, 589 F.2d 1139 (1st.Cir., 1978); McCarty's Case,  445 Mass.361, 837 N.E. 2d 669, 676-678

(2005) and the invidious interference with the terms and conditions of employment which caused a constructive termination of complainant's employment. .

Defendant's continuous violations of plaintiff's right to be free from discrimination in the terms and conditions of her employment, including but not limited to the right to receipt of wages, pension and other retirement benefits, on a non-discriminatory basis, violate Complainant's statutory and common-law rights. Sobel v. Yeshiva Univ., 839 F.2d 18, 21-23, 29 (2d.Cir., 1988)(...the failure to bring women's salaries up to par with those of men....is the sort of pattern and practice which would sustain a disparate treatment claim).

It is the law that an employer may not discriminate, on the basis of membership in/of a protected class, in the payment of wages. Sobel v. Yeshiva Univ., 839 F.2d 18, 23-24 (2d.Cir., 1978). The allegation in Sobel was that the employer's guideline system of salary increases, perpetuated and exacerbated pre-Act discrimination. The court noted that :....This claim is on all fours with the claim recognized by the Supreme Court in Bazemore (citation omitted).... Bazemore included an allegation of discrimination on the basis of race in salaries in the N.C. Agricultural Ext. Service. The plaintiffs alleged that initial salaries paid to black employees were lower than those paid to whites and that that discrimination was perpetuated by the defendant's system of increasing salaries which, in some ways, was remarkably similar to Yeshiva's guideline system". Id., at 29.

In the instant case, plaintiff has alleged facts sufficient to support imposition of liability for payment of discriminatory wages, (i.e. the defendant paid plaintiff, a black female, less than it did, for same or similar work, to others who were not of the protected class) which constitutes adverse terms and condition of employment, in violation of her rights under G.L.c.151B and 42 U.S.C. S.1981 . The same allegations will support liability under the EPA. Under the EPA, the complainant is not required to prove discriminatory intent. Garcia v. Barclays Capital, Inc. 281 F.Supp. 3d 365 (S.D.N.Y., 2017).

## PROOF OF A PRIMA FACIE CASE OF DISCRIMINATION

Generally, in cases of employment discrimination, the court follows the McDonnell-Douglas paradigm, with changes appropriate to the circumstances of a given action. The court will usually examine the record to examine the presence of certain elements: " (l) membership in a protected class; (2) harm/adverse action; (3)

discriminatory animus; (4) causation.   In Trustees of H & H v. MCAD, 449 Mass. 675 (2007) the court stated that the complainants ".. were not required to follow the **McDonnell Douglas,** paradigm in order to prevail.  It is certainly one way to present a case but it is not the only way.  Citing, **Knight v. Avon Products, Inc.**, 438 Mass. 413, 420n.4 (2003).  The first stage of the **McDonnell Douglas** paradigm gives rise to a presumption of discrimination (citations omitted).  But an 'inference of discrimination will suffice'".  It appears that under the reasoning of the court, once there has been a showing of a "presumption of discrimination" ….  the " .. burden then shifted to the Trustees to proffer a non-discriminatory reason for its decision together with 'credible evidence to show that the reason(s) advanced  the real reasons".   Even though the hearing commissioner (at MCAD) entertained the proffered reasons, the 'presumption' did not disappear.

     This formula is inapplicable where there is 'direct evidence' of discrimination. The instant case should not be adjudicated according to the McDonnell-Douglas formula, since the payment of discrimination wages is per se discrimination.   The defendant either did or did not pay, discriminatory wages to the plaintiff.   There is no need for the court to examine the facts to determine whether there was 'discriminatory intent'.

     In Lipchitz v. Raytheon, 434 Mass. 493 (2001), it was held that Employment decisions which are made because of stereotypical thinking about a protected characteristic or members of a protected class, whether conscious or unconscious, are actionable under G.L.c. 151B.   See, Thomas v. Eastman Kodak Co., 183 F.3d 38, 42 (1st.Cir., 1999) cert. denied, 528 U.S. 161 (2000).  … Under the plain language of G.L.c. 151B S.4, liability attaches when an adverse employment decision is made "because of " discrimination.  Lipchitz v. Raytheon, 434 Mass. 493 (2001) at 504-505.  Defendant paid plaintiff a discriminatory wage because of her race.  Liability will attach.

### DISCRIMINATORY PAYMENT OF WAGES-BREACH OF CONTRACT

     In Lipsitt v. Plaud, 466 Mass. 240 (2013), the court confronted the issue as to whether G.L.c. S148 and 150, were intended to be the exclusive remedy for the recovery of unpaid wages under Massachusetts law, preempting common-law breach of contract and related quasi-contract claims.   The court determined that they were not. Id., at 248-252.  The court ruled that "It does not upset this balance to continue to subject employers to normal contract liability for the full six-year statute of limitations period

applicable to contracts generally". Therefore, plaintiff has a justiciable claim for breach of contract-unpaid wages.

Notwithstanding the fact that plaintiff was not required to seek permission from the A.G., prior to commencing the instant action, plaintiff, did, in fact, notify the A.G. and did obtain permission to commence a private action. Plaintiff has averred in the Complaint that all conditions precedent have occurred. Such an averment is legally sufficient at this juncture.

There is no need for interpretation of the CBA to determine whether defendant owes plaintiff for unpaid wages. An examination of the defendant's payroll records, which it is statutorily required to maintain during the agency proceedings and litigation, will determine the validity of the rather uncomplicated wage claim.

## PLAINTIFF DID OBTAIN PERMISSION FROM THE ATTORNEY-GENERAL

The failure of a plaintiff, to obtain consent/permission from the Attorney-General, prior to commencing an action under the Wage Statute, is not a bar to litigation. DePianti v. Jan-Pro Franchising, Inc., 465 Mass. 607, 990 N.E. 2d 1054 (2013). The court stated, "…Accordingly, we hold that failure to file a complaint with the Attorney-General before initiating a private suit for alleged employment violations does not interfere with the accomplishment of the statutory purposes of S150 to a substantial degree…". 990 N.E. 2d 1062.

## THE EMPLOYER IS SUBJECT TO THE CONTINUING VIOLATION DOCTRINE

The complaint alleges that the defendant not only paid Ms.Bossman at a discriminatory rate but that it also refused to make contributions to the union package and retirement benefits, for discriminatory reasons. The respondent withheld sums of money from plaintiff's 'prevailing wages' and violated the wage statute by refusing to make 'mandatory' contributions toward 'fringe benefits'. These unrebutted allegations, will impose liability under S.1981, G.L. c.151 B (subjecting the complainant to discriminatory terms and conditions of employment) **and** on account of the commission of violations of the Wage Statute. See, **McCarthy's Case, supra, 837 N.E. 2d 669 at 676-678**; DePianti v. Jan-Pro Franchising International Inc., 465 Mass. 607, 990 N.E. 2d 1054 (2013). The defendant has repeated its violations of the Wage Statute and continues its

**repetition**, so long as the defendant refuses, to make the mandatory wage payments, as it has discriminatorily, failed to do, throughout the complainant's employment and during the 300 day period, prior to the Complainant's filing of the instant Charge with the MCAD.  42 U.S.C., s.2000(e)(3).

Under the continuing violation doctrine, where the allegation is that the discriminatory activity arises out of a discriminatory policy, the statute of limitations period begins to run at the end of the last asserted occurrence.  Chappelle v. DuPont Co., 497 F.Supp. 1197 (E.D. VA., 1980); Town of Ramapo v. Town of Clarkson, (S.D.N.Y., 2017).  Since at this stage, the allegations of the complaint must be accepted as true, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)(…plaintiff must have pleaded enough facts to state a claim to relief that is plausible on its face), it is uncontrovertible that there is an ongoing violation of Ms. Bossman's right to be free from adverse terms and conditions of employment (protected by G.L.c.151B (4))  which include the discriminatory refusal to make contributions toward fringe benefits.    The limitations period will not commence until the defendant makes the statutorily required payments, in full.  Therefore, Complainant has timely filed the instant Complaint.

### HOSTILE ENVIRONMENT CLAIM-AS CONTINUING VIOLATION OF G.L.c.151B and S.1981

It is undisputed that unequal compensation is a "continuing violation".  Chapell v. DuPont Co., 497 F.Supp. 1197 (E.D.Va., 1980).

### HOSTILE ENVIRONMENT/CONSTRUCTIVE DISCHARGE

The employer may subject the employee to such harsh terms and conditions of employment and/or interference with same, so as to subject the employee to constructive termination.  The law in this area is explained in Rivera & Rivera v Medina & Medina, 898 F.3d 77, 96 (1st.Cir., 2018).  The facts and reasoning in Olson v. Chao, (D.Mass., 2019-30th.Sept.,) could also be useful in advancing these theories of liability.  "….To succeed on a hostile work environment claim, a plaintiff must provide sufficient evidence from which  a reasonable fact-finder conclude that "her workplace was permeated with discrimination, ridicule and insult, that is sufficiently severe or pervasive to alter the conditions of employment  (citing, Roy v. Correct

Case Sols., LLC, 914 F.3d 52, 61 (1st.Cir.)....The offensive conduct, in other words, must be (1) severe or pervasive enough to create an objectively hostile or abusive work environment and (2) subjectively perceived by the victim, as abusive. ......The court looks at all the circumstances, including, among other things, the frequency and severity of the discriminatory conduct, whether it was physically threatening or humiliating and whether it unreasonably interfered with employee's work performance. See also, DiGiacomo v. Kennebec County, (USDC, D.Me., 19th.March, 2019).

A plaintiff may use the 'continuing violation theory', to raise claims on account of 'discriminatory acts' committed outside of the 300 day window. In Marrero v. Goya of P.R., Inc., 304 F.3d 7, 18 (1st.Cir., 2002) the court explained, with regard to 'hostile work environment' claims, the circumstances under which the plaintiff may circumvent the seeming bar of the SOL, on account of discriminatory activities which occurred more than 300 days prior to the filing of the agency charge, thus "..Hostile work environment claims are different ....A hostile work environment is created by "repeated conduct"-a series of acts that collectively, constitute one "unlawful employment practice"...As such hostile work environment claims do not "turn on single acts but on an "aggregation" of hostile acts, extending over a period of time....It follows that 'the unlawful employment practice which triggers the SOL, occurs, not on any particular day, but over a series of days or perhaps years" (citing, NRR Passenger Corp. v. Morgan, 122 S.Ct. 2061, 2073)...The SOL is satisfied so long as the plaintiff files a charge within 300 days of one of the many acts that, taken together, created the hostile work environment...The incidents comprising a hostile work environment, are part of one unlawful employment practice and in order to comply with the SOL, the employee need only file a charge within 300 days of any act that is part of the hostile work environment". Marrero v. Goya of P.R., Inc., 304 F.3d 7, at 18 (1st.Cir., 2002).

The facts of the instant case prove, indisputably, that the defendant and its agents, subjected plaintiff to a hostile environment by paying her at a discriminatory wage, throughout the employment and also, by refusing to pay her the prevailing wage, in violation of the Wage Act and then covering up their misdeeds so that plaintiff's right of access to the courts would be infringed. Under S.1981, plaintiff is not required to exhaust administrative remedies prior to commencement of litigation. All of the wrongs committed by defendant, including but not limited to its continued violation of the Wage Act-defendant has not yet paid plaintiff wages owed as of the time of the constructive termination- are actionable

under both 151B and S.1981.  The plaintiff is a black female citizen of the U.S.  This court is bound to evaluate the facts and circumstances of her employment in the context of the racist attitudes of authorities in the building trades and the two-fold oppression traditionally suffered by black females.  The court in Charles v. Leo, 96 Mass.App. Ct. 326, 332, 335-339 (2019), took notice of the history of racial antagonism by white persons toward black people who asserted their rights.  Such black persons were/are considered 'uppity' and were/are singled out for harsh, racist treatment.  In the instant case, plaintiff, a black supervisor, was not accorded the benefits, especially, wages and emoluments, of the position, entirely because of her protected status.  This court is required to take judicial notice, of these racist practices, in adjudicating the instant motion.  See also, Green v. Harvard-Vanguard, 79 Mass. App. Ct. 1, 944 N.E. 2d 184, 191-192 (2011)(in adjudicating an employment discrimination action, in which a supervisor referred to the plaintiff as a "..fucking nigger", the court took note of the lengthy history of the term as a basis for its decision).  The court should appoint an expert, pursuant to MGE S.706 to obtain guidance on the issue of racial discrimination experienced by black persons who exercise supervisory authority in fields which have been traditionally occupied by white persons See. MGE S.803 (17), S. 803 (18).  Such action by this court would seem to be mandated by the SJC's and C.J. Budd's recent avowal to combat 'structural racism' as part of the judicial response to the public alarm immanent at the traumatic death of Mr. George Floyd and the ongoing public protests over judicial inaction/complicity in the maintenance of such an edifice.

## LATE PAYMENT OF BENEFITS-WILL NOT EXCUSE THE VIOLATIONS

Even if the defendant were to contend, and it is accepted as true, **arguendo,** that defendant has paid all of the benefits which were due, that assertion will not absolve the defendant from liability, for discriminatory wages and benefits.  In Crawford v. Carroll, 529 F.3d 961 (11th.Cir., 2008) the court noted that a retroactive raise is insufficient because it did not change the fact that the raise  had been denied or eradicate the injury that its denial caused, that is, the  inability to use the money at that time.  Adverse employment action may also be found in discriminatory pay.  In Crawford v. Carroll, 529 F.3d 961, 970-972 (11th.Cir., 2008), the black female professor alleged that because of a discriminatory performance evaluation, the employer gave her a low merit pay increase.  The employer, following the plaintiff's protest, did, retroactively, grant a merit pay increase to the plaintiff.  The defendant's position that plaintiff had failed to show

'adverse action' because she had received the retroactive merit pay increase, was dispatched thus: "..From October, 2002 (when Crawford's pay cheque did not include the 4% merit pay increase, she otherwise would have received, absent the poor evaluation,, she was given in April, 2002, until her position was re-classified in March, 2003 and salary retroactively increased by 4% in October, 2003, Crawford suffered an 'adverse employment ' directly connected to her compensation......we too , decline to hold, as a matter of law, that a retroactive pay raise can "undo" the harm caused by a discriminatory or retaliatory act because such a decision could permit employers to elude liability for conduct that otherwise is actionable". Id., at 970-972.

### VIOLATIONS OF THE TERMS AND CONDITIONS OF EMPLOYMENT-FAILURE TO INVESTIGATE PLAINTIFF'S COMPLAINTS-AS ADVERSE EMPLOYMENT ACTION UNDER G.L.c.151B

The defendant committed itself to fair employment practices and invited employees, such as Ms.Bossman, to believe that it would be guided by same. Defendant also stated that it would promptly and fairly investigate complaints of discrimination and intended that its employees would rely on those promises.  These promises were sufficient to form the terms of a contract. Defendant, which is the largest construction contractor in Massachusetts and one of the 20 largest in the USA, with reported revenues in 2017 of $3.5 billion, has contracted with federal, state and local entities, to engage in construction activities.  As a quid pro quo for the awarding of contracts by public and governmental agencies, the defendant has agreed, in accordance with E.O. 526, to observe fair employment practices., in all phases of employment.  Ms.Bossman, as a member of the protected class, is an intended beneficiary of the pledges of fair employment practices, made by respondent to federal, state and local governments.

A salient allegation of the complaint is that defendant failed to conduct an investigation into Ms.Bossman's protest over discriminatory wages and sanctioned the discrimination.  In Ledoux v. Bristol Community College, 96 Mass. App. Ct., 1108 (2019), the court gave an expansive reading to the phrase "adverse employment action", when it observed "...G.L. c.151B does not define or include the phrase "adverse employment action" but we use the phrase to determine when an act of discrimination against an employee in compensation or in terms and conditions of employment ' may be remedied under c.151B..... "Cases have employed the phrase 'adverse employment action' to refer to the effects on working terms, conditions or privileges that are material

and thus governed by the statute, as opposed to those effects that are trivial and so not properly the subject of a discrimination claim". The court continued by stating "…By failing to conduct an investigation concerning Ledoux' complaint , particularly in light of the years of gender-related misconduct directed at Ledoux that was ignored or condoned by BCC and in light of the evidence that BCC knew Cordiero's allegation to be false, the jury could have found that BCC's actions and failures constituted adverse action.

The facts of the instant case, bring the defendant's failure to investigate under the teaching of Ledoux. Plaintiff complained, defendant did not investigate with the result that the workplace became contaminated with racist hostility which caused the involuntary termination. The defendant subjected plaintiff to invidious interference with the terms and conditions of her employment-the right to a statutory investigation-which constitutes adverse action on account of plaintiff's race.. These allegations are sufficient to state a separate and distinct claim for invidious interference with the terms and conditions of Ms.Bossman's contract of employment, i.e. the respondent's creation and perpetuation of a hostile environment. The omission of the employer, when notified of the existence of discriminatory terms and conditions of employment and of Ms.Bossman's protest/opposition to same, to promptly and fairly investigate and to halt the discriminatory acts, is per se, a violation of G.L.c.151B S.4. Gyulakian v. Lexus of Watertown,  475 Mass.290, 300-304 (2016).

## COVER-UP, CONCEALMENT OF WRONGFUL ACTS-AS SEPARATE TORT -TOLLING

The defendant is liable for fraudulent concealment from plaintiff, of a cause of action. In Chace v. Curran, 71 Mass. App. Ct. 258, 881 N.E. 2d 792 (2008), the court determined that the plaintiff had properly stated such a claim where the allegations of the amended complaint averred that the defendants made false representations of material facts, with knowledge of their falsity, for the purpose of inducing the plaintiffs to act thereon and that the plaintiffs relied upon the representations as true and acted upon them to their detriment (by letting the statutes of limitations and repose run on the potential cause of action). Id., at 264. The court ruled that 'non-disclosure may amount to fraud if a party is under, a duty to the other party to exercise reasonable care to disclose the matter in question'…..in essence, both claims sound in fraud and allege the existence of a fiduciary duty relationship that give rise to a duty on the defendants' part, to disclose

adequately to the plaintiffs, facts that would give rise to knowledge of a cause of action for substandard care in resuscitating Andrew'.

In the case at bar, the provisions of E.O. 526 and G.L.c.151B imposed a duty on defendant to conduct a thorough investigation and to report back, in timely fashion, to plaintiff, as to the results/findings.  The defendant's fraudulent concealment of its wrongful acts, prevented plaintiff from obtaining the information necessary to timely commence agency action or the filing of a civil action.

## THE ACTION DID NOT ACCRUE UNTIL A REASONABLE BLACK PERSON, WOULD HAVE DISCOVERED THE WRONG

The plaintiff acted reasonably in waiting for a report from supervisors, after her opposition to discriminatory pay.  The reasonable person, for limitations purposes, is not a detached, outside observer, assessing the situation without being affected by it.  Rather, it is a reasonable person who has been subjected to the conduct which forms the basis for the plaintiff's complaint…we look at "a reasonable person in the position of the plaintiff"…..If such an initially reasonable person would by reason of the experience forming the basis for the plaintiff's complaint, have his or her judgment altered in some way, such altered judgment then becomes the standard.  The cause of action will not accrue until such an individual would have discovered the damage…. In other words, if the defendant's conduct would, in an ordinary reasonable person, cause an injury, which by its very nature, prevents the discovery of its cause, the action cannot be said to have accrued ….Accrual of the cause of action occurs when the ordinary reasonable person who has been subjected to the experience would have discovered that the injury was caused by the experience.  See, Riley v. Pressnell, 409 Mass. 239, 245-246.

In accordance with the teaching of Charles v. Leo and Green v. Harvard Vanguard, supra, the court is required to weigh the circumstances and the context of racist practices of white supervisory officials, especially in the building trades, toward members of the protected class.  It is a truism that black people who seek information about terms and conditions of employment, are expected to wait, as long as white authority figures tell them to, in their quest for information and/or justice and know, that continued questioning would produce reprisals, in the form of adverse employment actions, i.e. undesirable shifts, denial of overtime, extremely close supervision of job performance, etc.  In the situation in which the black female plaintiff found herself, it was prudent for her to wait for a report back from supervisors, rather than reporting her suspicions to MCAD officials.

If a cause of action for fraudulent concealment did accrue, such accrual did not occur until plaintiff filed the Charge at MCAD. The limitations period was tolled, prior to the date of the filing, according to the provisions of G.L. c.260 S.12.

## EQUITABLE TOLLING:

The facts of this case lend themselves to equitable tolling.

Equitable tolling is proper (…if despite all due diligence, plaintiff is unable to obtain vital information bearing on the existence of her claim). Kassman v. KPMG, LLP (S.D.N.Y., 2015) (citing,Valdez ex rel. Dorely v. U.S. 518 F.3d 173, 182 (2d.Cir., 2008).

The plaintiff protested to supervisory officials about the pay disparity and was told that the supervisors would investigate the matter. The defendant has yet to investigate the complaint and report back to Ms.Bossman. In these circumstances, equitable tolling is appropriate since an African American female is not ordinarily kept informed about sensitive payroll data, including salary data of white co-workers, by the HR office of a major corporation and a court may take judicial notice of this truism.

The facts show that the defendant misled plaintiff into thinking that it would conduct a fair investigation and that plaintiff reasonably relied on that statement. Further, there was an agreement among supervisory officials to **MISLEAD and CONCEAL,** their violations. An integral part of the **CONCEALMENT PHASE** was the covering-up of the wrongs, so that plaintiff would learn about them, if at all, only after the limitations period had run and her right to seek administrative or legal relief, had been extinguished. Where the plaintiff alleges a continuing violation that gives rise to a claim of a discriminatory policy, the statute of limitations begins to run at the end of the last asserted occurrence. In the instant case, since '**concealment' and 'cover-up'** of their wrongs is an essential element of the achievement of the conspiratorial objective, there can be no **finis** to the illegal acts of defendant, sufficient to activate the statute of limitations clock. See, U.S.A. v. Stewart, 744 F.3d 17, 23 (1st. Cir., 2014).

Equitable tolling is proper, where the facts show that plaintiff, despite all due diligence, was unable to obtain vital information bearing on the existence of possible claims for relief, in light of the interference with her employment. Valdez ex rel. Dorely v. U.S., 518 F.3d 173, 182 (2d.Cir., 2008).

The plaintiff initiated the complaint procedure, in conformity with the provisions of state law and the CBA, by first speaking with her supervisor, obtaining his promise for

investigation and awaiting his report back to her.   This process, if plaintiff had been told
that it was unsuccessful, would have ripened into a formal grievance, which the union
would have been required to pursue under the CBA. Given these facts, the statute of
limitations was equitably tolled.  See, Flint v. City of Boston, 94 Mass. App. Ct. 298
(2018)(..The initiation of the process that, with an adverse outcome, could have resulted
in a grievance, falls within the scope of 804 CMR 1.10(2) where the process is initiated
by an employee covered by the CBA).  Thus, the limitations period is in abeyance and the
period will not commence so long as respondent and its agents are actively engaged in a
cover-up of their wrongs.

The supervisors, agents, employees of the employer and the employer itself, may
be held liable for committing acts in furtherance of an agreement/conspiracy to interfere
with an employee's rights, including, right of access to courts and/or to timely pursue a
'non-frivolous' claim/action before an administrative agency and/or the court.  D'Amour
v. Gray, 87 N.E. 3d 1202, 92 Mass. App.Ct. 1103 (2017)(....Gray committed tortious acts
in furtherance of the 'grand scheme' as late as 2010 and 2011, specifically, on 20th,Sept.,
2010, Gray testified in Birchell's behalf in the District Court Supplementary Process
action providing "dodgy answers" to questions posed by D'Amour's counsel.  In
addition, in June 2011, Gray filed a frivolous action against D'Amour and her attorney-
and later.....continued the charade by providing "audacious testimony" at the trial in
2014.   These actions by Gray.....continued to cause damage to D'Amour.....We
conclude that D'Amour's initiation of this action, within a few days of Gray's
'continuously conspiring conduct', was well within the statute of limitations.   The date
of 'accrual' of the cause of action, is a 'fact question'.

The elements of a prima facie showing were described as follows in Whitaker v.
Evans, (D.Conn., 2019) "....the plaintiff must show that the defendants' actions were
deliberate and malicious and that these actions caused him to suffer an "actual injury".
(citing, Belleza v. Holland, 730 F.Supp.2d 311, 314 (S.D.N.Y., 2010).  To demonstrate
an actual injury, the plaintiff must show that he suffered "actual prejudice'' with respect
to contemplated or existing litigation, such as the inability to meet a filing deadline or to
present a claim".  Lewis v. Casey, 518 U.S. 343  (1996)".......Prisoners have a
1st.amendment right of "meaningful access to the courts.....To establish a constitutional

violation....a plaintiff must show that the defendant's conduct was deliberate and malicious and that the defendants' actions resulted in an "actual injury" to the plaintiff....Thus, to state a claim for denial of access to courts....(a) The plaintiff must allege that "the defendants' conduct frustrated the plaintiff's efforts to pursue a non-frivolous claim", Belleza v. Holland, 730 F.Supp. 2d 311,  at 314.

In the instant case, the facts show that supervisory officials of defendant, entered into an agreement to interfere with Ms.Bossman's 'terms and conditions of employment'-which 'terms' include the statutory right to have complaints/opposition to racial harassment, promptly and fairly investigated and the imposition of liability for failure to do so.   The agreement comprised, at least two distinct parts: MISLEADING/DECEIT and COVER-UP.   By its very terms, the agreement has not been consummated since the actors continue to participate in a cover-up of the facts and to interfere with Ms.Bossman's right of access to the administrative machinery and to the courts, for relief.

In Cohen v. Brokers Serv. Marketing, LLC, (Mass.App.Ct.2015), the court reversed the lower court's denial of the plaintiffs' motion for leave to file a second amended complaint-in which they alleged violations of C.93A.  The procedural background is interesting and instructive:  The plaintiffs filed their complaint in January, 2010. That complaint was dismissed. In April 2012, plaintiffs filed a Motion To Vacate the Order of Dismissal-allegedly on the basis of information obtained in discovery and in June, 2012, plaintiffs filed a Motion To File a Second Amended Complaint-to add two new claims for violations of C.93A. In the proposed second amended complaint, the Cohens alleged that the defendants (Brokers and Allianz)  engaged in unfair and deceptive acts -C.93A- through their 'failures to disclose allegations of fraud and embezzlement  (by one Baldo, their agent) both to "potentially affected insurance consumers  and to Sun Life and Allianz.....who (sic) on the basis of the same information, would most likely have taken steps to terminate their relationship with him. ....Had the Brokers acted in some fashion (whether by investigating or absent an investigation, simply informing interested parties ) it is foreseeable that the Cohens would not have suffered the losses they did.  Given the reports that the defendants had received about Baldo, particularly the notification in writing, that he had stolen money  from another

client, Brokers' 'inaction' , could 'fairly be deemed "unfair and unethical" and a 'foreseeable cause' of the Cohens' injuries.....The factfinder could determine that Brokers' failures to act, in the face of the 'likely' and 'substantial' injury to Baldo's clients, constituted violations of the broad, remedial language of C.93A.  The court was not troubled by the plaintiffs' delay in presenting their motion.  The lower court had noted that the "lateness of the effort to amend, will not be held against the Cohens, due to the circumstances requiring the substitution of the parties plaintiff and the time lost in awaiting a decision on the motion to dismiss".  The allegations supplementing the second amended complaint were also unavailable to the Cohens at the time of the filing of their initial complaint, in January, 2010.

On this record, the defendant is liable for various acts of invidious interference with the terms and conditions of Ms.Bossman's employment-specifically: her right to a prompt and fair investigation of her complaint; to meaningful participation in the investigation; to be apprised in a timely fashion, of the results of the investigation, in order that she could pursue a non-frivolous action at an agency or in a court of law.   The violations of their statutory duties including investigation of the complaints and reporting back and concealment/cover up of their misfeasance, were committed with the intent to deprive plaintiff of her right to timely file a complaint at MCAD and to timely commence civil action.  These wrongs constitute invidious violation of right of access to the courts.

CONCLUSION:

The defendant is self-described in its promotional material, as the largest construction company in Massachusetts and performs substantial work, into the millions of dollars, on public work projects, at various levels.  There is a quid pro quo that, for doing business with the government, that the defendant would comply with E.O. 526 and the regulations of G.L. c.151B (4).  Thus, defendant receives public funds

but has been permitted to refuse to adhere to the law of the land.   This court must permit an examination of defendant's wrongdoing, which would include its violations of the requirements of:  the Wage Act; The Prevailing Wage and Fringe Benefits, as comprised of contributions toward the Union Package, all of which provide rights to the black plaintiff, which rights are entitled to protection by the state.

The defendant should not now escape liability for its statutory violations, by asserting a limitations defense of the plaintiff's purported failure to timely discover the defendant's wrongdoing.   As a matter of public policy, the wrong doer should not benefit from its wrongs, which it has concealed, at the expense of its victims, who are members of the protected class.  The virulence of the defendant's misfeasance is exacerbated by the fact that it receives financial assistance from the common weal, which includes members of the plaintiff's protected class.   The victims fund their own suffering.

The public interest in the fair and thorough investigation of complaints of racial discrimination, is of paramount importance.   The pronouncements of the Mayor of the City of Boston, that systemic racism is a disease, should be judicially noticed in the litigation of the defendant's motion.  The killing of one Mr.Floyd, a member of the protected class, at/under the knee of a governmental official, has produced much brow-beating and hand-wringing among elected officials and self-described 'leaders' who lament 'structural racism' and its repercussions on members of the protected class.   The litigation of the instant case, is a stellar example of the myriad ways in which corporate wrongdoers manipulate the administrative/legal mechanism to perpetuate racist practices. Those practices are painful and costly, financially and emotionally, to members of the protected class, such as Ms.Bossman.   If the recent pronouncements of SJC (post the George Floyd homicide) relative to the delivery of justice for all, without regard to race, are to become more than hollow platitudes, they must be informed, in the trial court, by careful consideration of the racist practices of corporate employers who intimidate black people into surrendering their right of access to the courts.

Respectfully submitted,

W.Kendall
136 Warren St.
Roxbury, Ma. 02119
(617) 442-6130